Roosevelt **HARPER**, Plaintiff–Appellant,

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 89–4503
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1989.

Laurel G. Weir, Thomas L. Booker, Philadelphia, Miss., for plaintiff-appellant.

David N. Usry, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., Scott C. Briles, Holly A. Grimes, Mary Ann Sloan, Mack A. Davis, and Bruce R. Granger, Asst. Regional Counsel, Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, Ga., for defendant-appellee.

Before CLARK, Chief Judge, and WILLIAMS and DUHÉ, Circuit Judges.

CLARK, Chief Judge:

Roosevelt Harper appeals the district court's affirmance of the Secretary of Health and Human Service's denial of his claim for Supplemental Security Income benefits. Harper filed his application for benefits in April of 1987, alleging total legal disability. After a hearing, an administrative law judge (ALJ) denied the claim. The Secretary, acting through the Appeals Council, affirmed. The district court then affirmed, adopting the recommendations of a United States Magistrate. Because the findings of the Secretary are supported by substantial evidence, we affirm.

## I.

### A. *Work History*

Harper was fifty-three when he filed his claim, has a third grade education, is married, has one dependent child and has worked as a logger and pulpwood worker. As a pulpwood worker, he cut wood by saw or axe and then carried the product on his shoulder, the wood weighing from twenty to one hundred-fifty pounds. As a logger Harper drove equipment called "knuckerbooms" and "skidders." Harper stated in the vocational report filed with his application for benefits that operating this equipment entailed lifting a maximum of fifty pounds, with prolonged periods of standing, walking and sitting, as well as frequent bending.

### B. *Medical History*

Harper's medical history is well-documented. Physicians at the University of Mississippi Medical Center (UMC) have treated him since 1977. Material here are his visits to UMC commencing in May, 1986. Harper complained of left elbow pain, swelling, neck pain radiating down both legs, grip problems and stomach pains. He was unable to fully extend his left arm, although he exhibited good flexor-extensor strength of the arm and forearm, with excellent flexion of the wrist. X-rays showed spurring in the elbow joint and mild degenerative disease in his spine. Doctors prescribed Motrin, which relieved the pain and allowed full extension of the arm. No abnormality was found that could have accounted for the stomach pains.

Later in 1986, Harper complained of depression, dizzy spells and lightheadedness upon standing. Because there was no drop in blood pressure when he stood up physicians attributed the lightheadedness to anxiety and depression. Harper also was suffering from sleep disturbances and decreased libido, and had a cataract in his left eye.

In 1987, Harper was examined by Archie Howard, M.D. Dr. Howard determined that Harper had 20/30 vision in the left eye accompanied by an early cataract, along with 20/25 vision in his right eye, but that his corrected vision was 20/20. The neck had a full range of motion and Harper was able to bend over and bring his fingertips within one inch of the floor with full flexion of the back, hips and shoulders with no tenderness. The knees were stable and had a full range of motion. His left elbow lacked 20 degrees of full extension, but there was no swelling or tenderness. Motor and sensory functions were intact.

Howard did find evidence of past peptic ulcer disease but no present symptomatology or pain. There was some bladder outlet obstruction but prostate examination proved normal. X-rays revealed some spurring on the upper lumbar vertebrae and left elbow.

J. Lee Valentine, D.O., also examined Harper in mid–1987. He found some early degenerative changes in the hands, fibromyalgia, mild depression, gastritis and gastroesophageal reflux; however, Valentine stated that he could not find any disabling condition and with suitable medical management Harper's prognosis would be "very good."

### C. *Administrative Findings*

Harper last worked in 1986. He applied for benefits in July, 1987, claiming legal disability because of weakness, dizziness, swimming in the head, rheumatism, stomach and eye disorders, mobility problems with his left arm and hips, sleep difficulties and nervousness. According to his testi-

mony at the administrative hearing, Harper cooks a little at home, works in the garden and can drive. He claims his arms and feet swell, his left leg gives way, he experiences severe pain in his back and hips and becomes sick and nauseated because of ulcers. He has memory problems and headaches. He also testified that he cannot work because of pain, he cannot sit or stand more than twenty-five minutes, and he has trouble dressing and bathing.

The ALJ found, and the Secretary affirmed, the following facts: (1) the medical evidence established that Harper had a severe cataract of the left eye, but it was "nonlimiting" as to Harper's ability to perform relevant work; mild depression, nonlimiting; mild degenerative spurring of the left elbow; and a history of peptic ulcer disease, not active; (2) Harper's complaints of pain, weakness, limitation of motion and other subjective symptomatology were not borne out by the credible medical findings of record; (3) Harper had capacity to perform work-related activities except for work requiring extreme heavy lifting; (4) Harper's past relevant work as a logging equipment operator did not require performance of work-related activities precluded by Harper's conditions; (5) Harper's impairments did not prevent him from performing his past relevant work; and (6) Harper was not disabled.

## II.

Harper contends that the ALJ and the district court misinterpreted the vocational report filled out by Harper in his application for benefits. He asserts that the report makes clear that his jobs required lifting extremely heavy weights, which the ALJ had determined Harper was incapable of doing.

Harper further contends that the ALJ and the district court required him to prove his disability by an amount of evidence more than the law requires; that is, according to Harper, "above a scintilla and by less that a preponderance of the evidence." In addition, Harper argues the ALJ's finding that Harper's impairments did not pre-clude him from performing relevant work is not supported by substantial evidence.

Harper next asserts that the ALJ misapplied the sequential guidelines for determining whether there is a disability and that she further erred by not hearing testimony from a vocational expert. Also, the ALJ did not give proper credence to Harper's symptomatological assertions.

Harper additionally argues that he was disabled because he was unable to pay for medication and that the ALJ improperly credited the testimony of one physician over another.

## III.

### A.

Our role in reviewing disability benefit decisions under the Social Security Act is limited to determining whether the Secretary's findings are supported by substantial evidence. *Rodriguez v. Bowen*, 857 F.2d 275, 277 (5th Cir.1988); *Owens v. Heckler*, 770 F.2d 1276, 1279 (5th Cir.1985). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Owens*, 770 F.2d at 1279 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to ... last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Secretary has promulgated regulations to determine disability in the form of a five-step, sequential evaluation process. *See* 20 C.F.R. § 416.920 (1988). If the claimant is found disabled, or not, at any one step in the inquiry, there is no further review. *Id.* § 416.920(a). Step four of the review requires the ALJ to determine whether the claimant, even though impaired, is capable of performing

past relevant work. If so, the claimant is not disabled. *Id.* § 416.920(e).

■ The ALJ found that Harper had the residual functional capacity to perform work-related activities except for work requiring "extreme heavy lifting." This conclusion is supported by substantial evidence. Medical tests revealed that except for a twenty degree deficiency of extension in his left elbow, Harper had full freedom of movement in his major joints, and full flexibility in his back. Except for minor deterioration of his left bicep, his musculature was normal, as was his neurological functioning. Mentally, Harper suffered from mild depression; but the ALJ's finding that the impairment would not effect Harper's ability to work was substantially supported by Drs. Lewis and Valentine's prognoses for the condition, which ranged from "fair" to "very good." Moreover, the ALJ correctly evaluated Harper's depression under the appropriate appendix in the disability regulations. *See* 20 C.F.R. ch. III, subpt. P, App. 1 § 12. Having duly considered the medical opinions and having made a clear finding that the mild depression was "non-limiting," we find the ALJ's conclusion to be supported by substantial evidence.

■ The ALJ further found that Harper's past relevant work as a logging equipment operator did not require him to lift extremely heavy weights, and that his impairments therefore did not prevent him from performing past relevant work. These conclusions are also supported by substantial evidence in the record. Harper stated in the vocational report that as a skidder and knuckerboom operator he was required to carry a saw and five-gallon cans of fuel and, at most, weights of up to fifty pounds. Because these are not extremely heavy weights, the ALJ's findings are supported by substantial evidence.

B.

None of Harper's challenges to the Secretary's conclusions survives examination. First, the vocational report completed by Harper differentiates between two types of jobs: pulpwood working and equipment op-

eration. Although pulpwood working clearly required Harper to carry extremely heavy weights, knuckerboom and skidder operation just as clearly did not. Thus the ALJ's and district court's interpretation of the document is correct.

■ Harper next contends that the ALJ required Harper to prove his disability by a greater weight of evidence than is required, the standard being "above a scintilla and by less than a preponderance of the evidence." Counsel misconceives the law. The quoted phrase refers to the quantity of evidence required to support administrative findings of the ALJ, not to a claimant's burden of proof. *See Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985).

■ Harper then argues that the ALJ failed to give due credence to his subjective complaints of pain. The Social Security Disability Benefits Reform Act of 1984 provides that:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings ... which could reasonably be expected to produce the pain or other symptoms alleged.... Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques must be considered in reaching a conclusion as to whether the individual is under a disability. 42 U.S.C. § 423(d)(5)(A).

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, this section requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Owens,* 770 F.2d at 1281. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. *Id; see also Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir.1988); *Parfait v. Bowen,* 803 F.2d 810, 813 (5th Cir.1986).

■ Substantial evidence anchors the ALJ's finding that Harper's complaints

were not "borne out by the credible medical findings of record." No physician stated that Harper was physically disabled. After treatment with Motrin, an anti-inflammatory and pain reliever, Harper's elbow motion was near normal and there was no tenderness. Further, two physicians stated they could find no abnormalities that could account for Harper's complaints. One doctor stated that with reasonable medical maintenance Harper's prognosis was "very good." Well supported by substantial medical evidence, we may not disturb this finding.

Harper fourth argues that the ALJ erred by applying incorrectly the medical-vocational guidelines set forth in the tables of 20 C.F.R. Part 404, Subpart P, Appendix 2 and further erred by applying them without benefit of expert testimony. Counsel has misread the ALJ's decision. Although she discussed these guidelines generally in her Notice of Decision, the ALJ did not apply them to Harper's case; rather, she specifically found that Harper was capable of performing past relevant work. The ALJ correctly did not apply the medical-vocational guidelines as they are to be applied only when it is found that the claimant is incapable of performing past relevant work. 20 C.F.R. § 416.920(f). The lack of expert testimony therefore becomes irrelevant.

Lastly, Harper contends that he was unable to afford medical attention; therefore, he is disabled pursuant to the rule of *Lovelace v. Bowen*, 813 F.2d 55 (5th Cir. 1987). In *Lovelace* we held that a condition disabling in fact becomes disabling in law if the claimant is unable to obtain treatment. *Id.* at 59. However, no physician on record has pronounced Harper disabled and his subjective symptomatology has been found incredible. Moreover, "this rule does not encompass claims of persons who can prove no disability but only seek benefits as a means of affording care that might conceivable prevent a disability." *Burnside on Behalf of Burnside v. Bowen*, 845 F.2d 587, 592 (5th Cir.1988). The *Lovelace* rule does not apply to Harper. We also note that Harper has become eligible for Medicaid payments since filing his disability claim.

Finally, Harper's argument that the ALJ improperly credited the testimony of one physician over another is unfounded. The ALJ's Notice of Decision states clearly the various findings and opinions of Harper's doctors and harmonizes them.

## IV.

The Secretary's findings are supported by substantial evidence, and Harper has advanced no argument of law that has the slightest merit. The judgment of the district court affirming the Secretary's decision denying benefits is AFFIRMED.